**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

| | |
|---|---|
| OI EUROPEAN GROUP B.V.,<br><br>*Plaintiff-Appellee,*<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>*Defendant.*<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>*Intervenor-Appellant.* | No. 23-1647<br><br>On Appeal from Orders entered by U.S. District Court for the District of Delaware, Misc. Action No. 19-mc-290-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC.,<br><br>*Plaintiff-Appellee,*<br><br>v.<br><br>THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,<br><br>*Defendant.*<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>*Intervenor-Appellant.* | No. 23-1648<br><br>On Appeal from Orders entered by U.S. District Court for the District of Delaware, Misc. Action No. 20-mc-257-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD.,<br><br>*Plaintiff-Appellee,*<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, | No. 23-1649<br><br>On Appeal from Orders entered by U.S. District Court for the District of Delaware, Misc. Action |

| | No. 21-mc-46-LPS |
|---|---|
| *Defendant.*<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>*Intervenor-Appellant.* | |
| RUSORO MINING LIMITED,<br><br>*Plaintiff-Appellee,*<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>*Defendant.*<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>*Intervenor-Appellant.* | No. 23-1650<br><br>On Appeal from Orders entered by U.S. District Court for the District of Delaware, Misc. Action No. 21-mc-481-LPS |
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL,<br><br>*Plaintiff-Appellee,*<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>*Defendant.*<br><br>PETRÓLEOS DE VENEZUELA, S.A.<br><br>*Intervenor-Appellant.* | No. 23-1651<br><br>On Appeal from Orders entered by U.S. District Court for the District of Delaware, Misc. Action No. 22-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>*Plaintiff-Appellee,*<br><br>v. | No. 23-1652<br><br>On Appeal from Orders entered by U.S. District |

| BOLIVARIAN REPUBLIC OF VENEZUELA, *Defendant.* PETRÓLEOS DE VENEZUELA, S.A. *Intervenor-Appellant.* | Court for the District of Delaware, Misc. Action No. 22-mc-453-LPS |
| --- | --- |

## <u>PDVSA'S REPLY FOR A STAY PENDING APPEAL</u>

Appellees ignore or downplay the critical basis for halting all further proceedings in the district court pending PDVSA's appeals: forcing PDVSA to continue defending any part of these actions in the District Court while this Court reviews the alter ego determination would irreversibly "destroy the 'legal and practical value' of [PDVSA's] sovereign immunity defense." *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281-82, 1286 (3d Cir. 1993). That is because, at the execution stage, PDVSA "will have been forced to endure the very burden [it is] arguing [it] should not be subjected to in the first place," *i.e.*, being dragged into litigation over the ownership of its assets in actions to enforce judgments entered solely against the Republic. *Id.* at 1282, 1288.

None of the cases cited by Appellees involve a situation in which a district court was allowed to force a sovereign defendant to continue defending an action while an appeal of a denial of its sovereign immunity was pending. Indeed, no court has ever followed the District Court's contrary view since it first adopted it in *Crystallex* in 2018, and this Court overruled that decision by staying all district

court proceedings unconditionally pending PDVSA's sovereign-immunity appeals in that case. *In re Petróleos de Venezuela, S.A.*, No. 18-2889, 2018 U.S. App. LEXIS 37167, at *2 (3d Cir. Nov. 23, 2018).

Were this Court to reverse course now and allow the District Court to move forward during the pendency of these appeals, it would create a split with the D.C. Circuit, which has clearly established that a district court is automatically divested of jurisdiction over the entire action when a sovereign defendant appeals from a denial of its sovereign immunity. *See Princz v. Fed. Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (per curiam) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *see also In re Socialist People's Libyan Arab Jamahiriya*, No. 04-7038, 2004 U.S. App. LEXIS 7244, at *1 (D.C. Cir. Apr. 13, 2004) (per curiam).

## REASONS FOR HALTING
## DISTRICT COURT PROCEEDINGS

### I.    Appellees Disregard the Basic Rationale for the Divestiture Rule

Contrary to Appellees' suggestion, the Third Circuit did not reject PDVSA's divestiture argument in *Crystallex*. There, the District Court authorized the issuance and service of the writ of attachment after PDVSA filed its notice of appeal, rejecting PDVSA's divestiture argument. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-mc-151-LPS, 2018 U.S. Dist. LEXIS 144118 (D. Del. Aug. 23, 2018). PDVSA appealed that order and

petitioned this Court for a writ of mandamus vacating the attachment and directing the District Court to stop any and all further proceedings against PDVSA and its property pending PDVSA's sovereign-immunity appeals, based on the divestiture rule. A panel of this Court initially denied the mandamus petition without an opinion, but then, on PDVSA's petition for rehearing, the panel reinstated PDVSA's mandamus petition and stayed "all [district court] proceedings" pending PDVSA's appeals and mandamus petition—having the same practical effect as the divestiture rule. *In re Petróleos de Venezuela, S.A.*, No. 18-2889, 2018 U.S. App. LEXIS 37167, at *2 (3d Cir. Nov. 23, 2018). While the Court ultimately denied PDVSA's mandamus petition, it did so after affirming the District Court's jurisdiction to issue the writ of attachment, thus mooting the divestiture issue. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 133 n.1 (3d Cir. 2019).

Appellees incorrectly rely on the same type of cases cited by the District Court for the notion that the District Court retains jurisdiction to enforce a judgment pending appeal. Again, all of these cases, such as *NLRB*, are inapposite, because they did not involve sovereign-immunity appeals. And that is the critical distinction. Sovereign immunity is a threshold defense that must be conclusively decided "as near to the outset of the case as is reasonably possible" in order to preserve the benefits of any sovereign immunity to which the sovereign defendant

is presumptively entitled. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*., 581 U.S. 170, 174 (2017).

Accordingly, courts have consistently held that an appeal from the denial of sovereign immunity divests the district court of jurisdiction to proceed with any part of the action pending that appeal. *See, e.g., Princz*, 998 F.2d at 1; *Azima v. Rak Inv. Auth.*, No. 16-cv-1948, 2018 U.S. Dist. LEXIS 225192, at *5-7 (D.D.C. Nov. 5, 2018) (K.B. Jackson, J.). Everyone agrees (including the District Court) that, as a presumptively separate corporate instrumentality, PDVSA is entitled to assert its own immunity under the FSIA and to take an immediate appeal of the denial of its immunity. Appellees fail to distinguish the Second Circuit's decision in *EM Ltd. v. Banco Central De La Republica Argentina*, which involved efforts to enforce judgments against Argentina by executing on assets of Argentina's central bank on an alter ego theory, and which held that "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine to subject [the central bank] to further burdensome litigation" before "conclusively" resolving its sovereign-immunity defense, including the alter ego determination. 800 F.3d 78, 87, 88 & nn.38, 45 (2d Cir. 2015).

The notion that the District Court retains jurisdiction to enforce "the judgment" is only true with respect to Venezuela, not PDVSA, because these judgments have not been entered against PDVSA. The entire basis for enforcing

these judgments against PDVSA's property is the alter ego determination, which is also the sole basis for abrogating PDVSA's immunity. And that is the "aspect of the case" that is now before this Court, and that the District Court no longer controls. *Princz*, 998 F.2d at 1 (quoting *Griggs*, 459 U.S. at 58). If the District Court is allowed to proceed with enforcing the judgment against PDVSA's property while these appeals are pending, the District Court would be interfering with this Court's ability to conduct a meaningful and effective review of PDVSA's sovereign immunity as part of its de novo review of the alter ego issue. *Federal Insurance*, 12 F.3d at 1281-82; *see also Princz*, 998 F.2d at 1.

It does not matter that the "merits" of the underlying actions against Venezuela have already been decided or that PDVSA is not going to be subjected to a "trial" while the appeals are pending. This litigation is far from over. As Appellees concede, there is still a lot to do in the District Court for these judgments to be enforced against the PDVH shares in accordance with the OFAC sanctions and Delaware state law, and Appellees are seeking further relief that they may not be entitled to if this Court reverses the alter-ego determination and consequently concludes that PDVSA and its property are immune from all of these actions. Sovereign immunity is "not just a defense to liability on the merits," but rather an immunity from all of "the attendant burdens of litigation" as "those burdens may compromise [the sovereign defendant] just as clearly as would an ultimate

- 7 -

determination of liability." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998); *see Process & Indus. Devel. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 581, 584-86 (D.C. Cir. 2020) ("*P&ID*"). Here, the "merits" of the alter ego determination were bound up with the sovereign immunity defense, so PDVSA was forced to litigate that issue at the jurisdictional stage. But that only highlights why the District Court is divested of jurisdiction to proceed against PDVSA's property—without the alter ego determination, which is now on appeal, the PDVH shares are property of PDVSA, not Venezuela. If a defendant is shielded from a "trial" by an appeal from a denial of its sovereign immunity, it is *a fortiori* shielded from proceedings to execute on its property pending the same appeal.

## II.  PDVSA Has Met This Court's Test for a Discretionary Stay

Divestiture rule aside, the circumstances of this case cry out for a discretionary stay pending appeal, as the District Court's decision is laden with reversible errors, the irreversible harm to PDVSA's sovereign immunity is certain, any risk of injury to Appellees is purely speculative, and the public interest favors respect for U.S. foreign policy at least while this Court reviews the District Court's decision *de novo*.

*Likelihood of Success*. PDVSA is only required to show that its appeals raise "serious questions going to the merits." *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 570-71 (3d Cir. 2015). PDVSA easily clears this bar.

While Appellees may want to treat this matter as a standard appeal, the seriousness and novelty of the questions presented in this case cannot go ignored. *See United States v. Safehouse*, 468 F. Supp. 3d 687, 692 (E.D. Pa. 2020); *see also Adams v. Carney*, No. 17-181-MPT, 2018 U.S. Dist. LEXIS 105529, at *8-9 (D. Del. June 25, 2018). No court of appeals has ever been called upon to revisit a set of facts on an alter ego analysis where there has been a complete change of the political and corporate structure governing the particular entity in question, and no court of appeals has previously ruled on the relationship between the Interim Government and PDVSA.

As explained in PDVSA's motion, there are many errors in the District Court's legal reasoning, not the least of which was its determination that the current conduct of the illegitimate Maduro regime was at all relevant in the alter ego analysis. To the extent Appellees acknowledge that the District Court's alter ego determination must stand because it is an extension of the District Court's and this Court's alter ego determination in *Crystallex*, that is an obvious legal error because there can be no doubt, under Supreme Court and this Court's precedent, that the acts of an unrecognized foreign regime are meaningless for deciding ownership of sovereign property in the United States. *See Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015); *United States v. Pink*, 315 U.S. 203, 229 (1942); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944). Furthermore, Appellees do not grapple with the

District Court's legal error of failing to differentiate between extensive, day-to-day control and the Interim Government's exercise of normal regulatory authority intended to protect PDVSA assets in the United States from the illegitimate Maduro regime and to restore, not undermine, PDVSA's corporate independence. *See GSS Group Ltd. v. Nat'l Port Authority of Liberia*, 822 F.3d 598, 606 (D.C. Cir. 2016). Nor do Appellees dispute that many of the other facts were exercises of ordinary shareholder rights, as the District Court itself acknowledged, such as the right to appoint the board of directors or to be the ultimate beneficiary of the corporation's profits. These facts cannot, as a matter of law, be used to support an alter ego determination under *Bancec*, or else all state-owned enterprises would be subject to alter ego liability as a matter of course. PDVSA's odds of success are thus at least significantly better than negligible.

*Irreparable Harm to PDVSA*. Any infringement of sovereign immunity is an irreparable harm in and of itself. *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992); *P&ID*, 962 F.3d at 586; *see also Fed. Ins.*, 12 F.3d at 1281-82. Appellees' reliance on *Enron Nigeria Power Holding, Ltd. v. Federal Rep. of Nigeria*, 70 F. Supp. 3d 457 (D.D.C. 2014), is misplaced. *Enron* did not involve a sovereign-immunity appeal, but an appeal from a decision granting leave to re-serve a foreign state. 70 F. Supp. 3d at 459. Thus, the irreversible deprivation of the foreign state's immunity from suit was not at issue.

Additionally, Appellees argue that any harm from a potential sale is speculative, as no OFAC license has been granted yet. That argument is internally inconsistent and disingenuous, as Appellees go on to argue that they will suffer irreparable harm if the sale is not permitted to proceed, even though none of them have an OFAC license. They cannot have it both ways. Either that injury is speculative, or it is not. Furthermore, there is more than money at risk. PDVSA's ownership or, at a minimum, controlling interest in PDVH and its indirect ownership in CITGO is also at risk. If these Appellees' judgments are added under the Sale Procedures Order in *Crystallex* (which is not permitted because they do not have actual attachments), it could force the marketing and sale of a greater number of shares than would otherwise be necessary to satisfy only Crystallex's judgment were this Court to reverse the alter ego determination. *See* Mot. 19-20.

**No Substantial Injury to Others**. While the first two factors are most critical and PDVSA has satisfied them, *In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021), the third and fourth factors also favor a stay.

Where the movant shows its injury is "virtually guaranteed" and the opponent's alleged harm is "at best speculative," the balance-of-harms tilts in the movant's favor. *Revel*, 802 F.3d at 572-73. Appellees cannot show that they are likely to suffer any harm if a stay is granted. To the extent the District Court's orders create any right or interest in the PDVH shares, they would violate the

OFAC regulations and be void *ab initio*. Appellees only allege injuries that might occur after OFAC licenses are granted, a circumstance that is speculative. *See Koch*, 1:22-mc-00156-LPS, D.I. 27, at 12; *Northrop*,1:20-mc-00257, D.I. 87, at 12. However, as explained above, the denial of a stay would irreparably injure PDVSA by infringing on its sovereign immunity and so the balance-of-harms weigh in PDVSA's favor.[1]

*Public Interest*. Appellees cite cases stating that the enforcement of judgments is in the public's interest. But in none of those cases were the courts asked to balance the enforcement of judgments against a defendant's entitlement to sovereign immunity or the potential interference with the U.S. government's foreign policy. Where a court is dealing with a sovereign defendant, there is a strong public interest in not interfering with prerogatives entrusted to the Executive Branch, such as the power to recognize foreign governments, which is a big part of what is at stake here. *See Zivotofsky*, 576 U.S. at 28; U.S. Statement of Interest, at 4, Meehan Decl., Ex. 8, *OIEG*, No. 1:19-mc-00290, D.I. 67-1.

---

[1] Some Appellees suggest that, under recent OFAC guidance, issuance and service of the writ is no longer prohibited. That is plainly wrong, and only goes to show that there is still a lot to litigate in these actions, which if allowed to proceed pending appeal, would constitute further irreversible infringements on PDVSA's sovereign immunity.

### III.    A Bond Should Not and Cannot Be Required

Appellees have not cited a single case in which a court has required a sovereign defendant to post a bond pending an appeal of a denial of sovereign immunity, and PDVSA is aware of none. Current OFAC sanctions make it impossible for PDVSA to do so. *See, e.g.*, E.O. 13808 § 1(a)(i), 82 Fed. Reg. 166 (Aug. 29, 2017) (prohibiting any U.S. person from engaging in any financing transactions involving "new debt" of PDVSA "with a maturity of greater than 90 days."); U.S. Dept. of Treasury, OFAC, Other Sanctions Programs: *Venezuela Sanctions*, FAQ No. 511, https://ofac.treasury.gov/faqs/511 (defining debt as any "bonds, loans, extensions of credit, loan guarantees, letters of credit, drafts, bankers acceptances, discount notes or bills, or commercial paper"). No bank or bonding company would or could take that risk. *See* 31 U.S.C. § 9304 (bond surety must be a U.S. person); Fed. R. App. P. 8(b) (bond surety must submit to jurisdiction of U.S. court).

# <u>CONCLUSION</u>

This Court should stay all district court proceedings in these cases pending

PDVSA's appeals.

Respectfully Submitted,

*s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
Aubre G. Dean
Allesandra D. Tyler
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com
adean@curtis.com
atyler@curtis.com

*Attorneys for Intervenor-Appellant*
*Petróleos de Venezuela, S.A.*

Submitted: May 4, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 4ᵗʰ day of May, 2023, I caused a copy of the foregoing motion to be filed electronically with the United States Court of Appeals for the Third Circuit via the Court's Electronic Filing System, and to be served electronically upon all counsel of record through that system.

## CERTIFICATION OF BAR MEMBERSHIP

This motion complies with Local Appellate Rule 28.3(d) because at least one of the attorneys whose names appear on the brief, including Joseph D. Pizzurro, is a member in good standing of the bar of this Court.

## CERTIFICATION OF COMPLIANCE WITH RULE 27(d)

Pursuant to FRAP 32(g)(1), I hereby certify that this Motion complies with the word limitation set forth in FRAP 27(d)(2)(C) because it does not exceed 2,600 words.  This Motion also complies with the typeface requirement of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) pursuant to FRAP 27(d)(1)(E) because it has been prepared in a proportional typeface in 14-point Times New Roman font. This PDF document that is being electronically filed also complies with L.A.R. 31.1(c) because it has been scanned with version 14 of Symantec Endpoint Protection and no virus was detected.

*s/ Joseph D. Pizzurro*
Joseph D. Pizzurro